UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------x

AIR INDIA, LTD., et. al.,

                Plaintiffs,

     -against-

UNA F. BRIEN, et. al.,

               Defendants.

----------------------------------------------x

**MEMORANDUM AND ORDER**

00 - CV - 1707

GLASSER, United States Senior District Judge

## **INTRODUCTION**

        This action has been the subject of protracted litigation extending over a period of more than a decade and involving more than a dozen airlines. Familiarity with the underlying facts and issues is assumed. These issues have been litigated repeatedly before this Court not only in this action, but in three related ones as well,[1] and have found their way to the Court of Appeals for the Second Circuit and back. Despite the numerous efforts of this Court to decide the issues with finality, this action once again presents itself for adjudication. These efforts have obviously failed. Currently pending before the Court is Defendants' Fed. R. Civ. P. 60(b)(6) motion for relief from this Court's March 13, 2003[2] Order.

---

[1]     See <u>Air Espana et. al. v. Brien, et. al.</u>, 95-cv-1650, <u>United Airlines et. al. v. Brien et. al.</u>, 01-cv-2389 and <u>Finnair Oy et. al. v. Brien et. al.</u>, 02-cv-900.

[2]     The Order was signed and dated March 13, 2003. Defendants' motion indicates that they are seeking relief from the March 17, 2003 Order. A review of the docket sheet indicates that although the Order was signed on March 13, it was docketed

1

**BACKGROUND**

On March 23, 2000, a group of airlines (collectively, "Air India" or "Plaintiffs") filed this action seeking a declaratory judgment that the Immigration and Naturalization Services's ("INS") imposition of fines on them for transporting special immigrants who subsequently received waivers of the visa requirement was unlawful. Additionally, Plaintiffs sought a declaration that a 1998 amendment to the Regulations addressing visa requirements of aliens ("the Regulations"), promulgated pursuant to 8 U.S.C. § 1323, was void because it was contrary to Congressional intent and because it was promulgated without opportunity for notice and comment in violation of the Administrative Procedure Act, 5 U.S.C. § 553 ("APA"). In a Memorandum and Order ("M&O") dated February 14, 2002, this Court extensively reviewed the Regulations promulgated under 8 U.S.C. § 1323, specifically, 8 C.F.R. § 211,[3] including the various revisions and amendments to the Regulations. In that M&O, this Court determined that while the fines were properly imposed pursuant to the plain text of the Regulation, the 1966 version of the Regulation was void as it was promulgated in violation of the APA's notice and comment requirement. Since the 1966 version allowed for the imposition of fines where the 1957 version did not, the 1966 version imposed a liability that did not exist in the previous version and was thus subject to the notice and comment requirement. Since it did not comply with the APA, the Regulation was void and any

on March 17, which accounts for the discrepancy.

[3]     8 C.F.R. §§ 211 and 212 are the Regulations that are at issue in these cases. The difference between the two Regulations deals with the status of the alien. Here, § 211 applied.

fines imposed pursuant to the Regulation were arbitrary and capricious. This Court also determined that any challenges to the 1998 amendment were not ripe for review. See Air India, et. al., v. Brien, et. al., No. 00-1707, slip op. (E.D.N.Y. Feb. 14, 2002).

Subsequently, Defendants moved for reconsideration of the March 13 Order pursuant to Fed. R. Civ. P. 59(e). Defendants asserted a statute of limitations defense, contending that challenges to Regulations as being promulgated without notice and comment in violation of the APA are subject to a six year statute of limitations as set forth in 28 U.S.C. § 2401. In an M&O dated March 13, 2003, this Court determined that any procedural challenge to the 1966 Regulation was in fact time barred, but revisited the substantive challenge to the Regulation.[4] Noting that this Court had addressed several substantive challenges in its February 14 Order and rejected them, this Court nonetheless considered a previously unconsidered substantive challenge: namely, that the imposition of fines under the Regulation was improper in that it violated the stated intent of the Attorney General in promulgating the 1966 version of the Regulation. This Court noted that the notice and comment section of the 1966 version specifically stated that the Regulation was not subject to notice and comment because it "confer[red] benefits on persons affected thereby." 31 Fed. Reg. 13387 (Oct. 15, 1966). This Court found that such a clear expression of intent refuted the argument that the Regulation was intended to impose liability on airlines when none had existed under the 1957 version of the Regulation, despite the clear language of the 1966 Regulation that in fact did allow for the imposition of fines. This Court also found that the INS had not sought

---

[4] The substantive challenges were not time barred because Plaintiffs had all filed suit within six years of a final agency action subjecting them to a fine.

to impose the fines for the first twenty-two years after the 1966 Regulation, which suggested that the INS had not interpreted the Regulation as allowing for such fines, either.  Therefore, this Court found that the INS's decision to impose fines twenty-two years after the 1966 version of the Regulation was promulgated was arbitrary, capricious and an abuse of discretion.  See Air India v. Brien, 261 F.Supp.2d 134 (E.D.N.Y. 2003).

Considering the six-year statute of limitations to procedural challenges, this Court sua sponte addressed the Plaintiffs' procedural challenge to the 1998 amendment of the Regulation.  The Court found that the 1998 amendment to the 1997 version of the Regulation was a legislative rule that was subject to the notice and comment requirement of the APA.  Since there was no notice and comment period, it was void.  See id.

On September 14, 2004, this Court issued an M&O in a related case, United Airlines, Inc. v. Jones, 337 F.Supp.2d 406 (E.D.N.Y. 2004) ("United Airlines"). In United Airlines, this Court held that the unambiguous Congressional intent of 8 U.S.C. § 1323 was to preserve fines against airlines which brought undocumented aliens to the United States regardless of the subsequent admission of the alien either via waiver of the required documents or parole.  In a lengthy and detailed M&O, this Court analyzed prior decisions of the Board of Immigration Appeals ("BIA") that found certain versions of the Regulations as not allowing for the imposition of fines on airlines when the alien received a waiver of the documentary requirements.  This Court found those BIA decisions to be contrary to Congressional intent and flawed.  Relying heavily on the Supreme Court decision in Hamburg-American Line v. United States, 291 U.S. 420 (1934), this Court found that interpreting Regulations as not allowing for the imposition

of fines was erroneous. The Court specifically found that a waiver of the required documents is "for the benefit of the alien and not for the benefit of the carrier as against which the fine is preserved against any discretionary admission." United Airlines, 337 F.Supp.2d at 418. Moreover, this Court found that since "[t]he manifest intention of Congress . . . was to subject carriers to a penalty for taking on board and bringing to the United States aliens not in possession of required documents," id. (citation omitted), any administrative interpretation of Regulations to the contrary must be, and therefore were, rejected. See id.

Based on the decision in United Airlines, Defendants moved this Court on December 1, 2004 pursuant to Fed. R. Civ. P. 60(b)(6) for relief from the March 13, 2003 Order.

## DISCUSSION

### I. Fed. R. Civ. P. 60(b)

#### A. Timeliness

In relevant part, Fed. R. Civ. P. 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; or (6) any other reason justifying relief from the operation of the judgment. [5]

---

[5] Subparts (2) through (5) of 60(b) provide for relief for the following reasons: (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or

Rule 60(b) motions may be granted only where the movant makes a showing of exceptional circumstances requiring relief. See Spinelli v. Sec'y of Dept. of Interior, No. 99-8163, 2006 WL 2990482, at *2 (E.D.N.Y. Oct. 19, 2006) (Bianco, J.) ("'Since 60(b) allows extraordinary relief, it is invoked only upon a showing of exceptional circumstances.'") (quoting Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003)). The provisions of Rule 60(b) are mutually exclusive, such that "a court 'may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable.'" Spinelli, 2006 WL 2990482, at *3 (quoting Maduakolam v. Columbia Univ., 866 F.2d 53, 55 (2d Cir. 1989)); see also Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).") (citations omitted). While "[t]he Rule does not particularize the factors that justify relief," id. at 864, the Supreme Court has noted "that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,'" id. (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949) (plurality opinion of Black, J.)), "while also cautioning that it should only be applied in 'extraordinary circumstances.'" Id. (quoting Ackermann v. United States, 340 U.S. 193 (1950)).

Plaintiffs assert that this motion is untimely because it is properly a

otherwise vacated, or it is no longer equitable that the judgment should have prospective application. These provisions are not relevant here.

60(b)(1) motion and therefore bound by a statutory one year limitation, or, alternatively, if it is properly a 60(b)(6) motion it is untimely because it was not brought within a "reasonable time" as required by the statute. Defendants assert that it is properly a 60(b)(6) motion and is timely because it was brought approximately three months after this Court's decision in <u>United Airlines</u> which conflicted with the March 13 Order.

        If this motion is properly subject to Fed. R. Civ. P. 60(b)(6), and does not fall under the purview of subparts (1) through (5), it is in fact timely. While subparts (1) through (3) must be made within one year of the order which is sought to be set aside, <u>see</u> Fed. R. Civ. P. 60(b) ("the motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken"), subparts (4) through (6) must be made only within a "reasonable time." <u>Id.</u> Here, Defendants have moved pursuant to Fed. R. Civ. P. 60(b)(6) based on this Court's decision in <u>United Airlines</u>, which was entered on Sept. 14, 2004. Defendants made this motion on Dec. 1, 2004, a mere two and a half months after the <u>United Airlines</u> decision. Although their motion was made more than a year after the March 13 decision from which they seek relief, and thus would be time-barred if it properly should have been made pursuant to subparts (1) through (3), it would be timely if properly made pursuant to subpart (6). <u>See</u> <u>Dunlop v. Pan Am. World Airways, Inc.</u>, 672 F.2d 1044, 1051 (2d Cir. 1982) (Finding Fed. R. Civ. P. 60(b)(6) motion timely where it was filed within four months of a New York State decision putting appellants on notice of a potential problem with a federal settlement, even though it was made two years after the settlement at issue, because "[u]ntil the [state] dismissal, appellants had

understandably relied on repeated assurances by the Secretary that the federal settlement would not bar their state claims.").

Thus the timeliness of the motion depends on whether it was properly brought pursuant to subpart (6) in that it does not fall into any of the other five subparts.  Defendants assert several grounds justifying relief pursuant to Fed. R. Civ. P. 60(b)(6): (1) this Court's decision in <u>United Airlines</u> demonstrates that this Court's decision in <u>Air India</u> was incorrect; (2) this Court rendered the decisions in <u>Air India</u> and <u>United Airlines</u> that are at odds with each other, so it is fitting that this Court clarifies the confusion resulting in those decisions; (3) the interests of justice dictate that this Court re-visit its decision in <u>Air India</u> because it creates confusion in the law, making immigration enforcement and control of the borders difficult; (4) Plaintiffs have appealed the <u>United Airlines</u> decision, and the confusion between <u>Air India</u> and <u>United Airlines</u> will likely create difficulties for Defendants in defending that appeal; and (5) the interest in preserving the finality of judgments is limited in this case where this action is interconnected with several other cases that are at different stages of litigation and there currently is no finality in judgment.  Plaintiffs, on the other hand, contend that in reality Defendants' motion is one to correct either (1) Defendants' own mistake in failing to previously assert a defense it contends is meritorious; or (2) what Defendants assert is this Court's "error" in its <u>Air India</u> decision, both of which are in fact bases for a motion pursuant to Fed. R. Civ. P. 60(b)(1), and are thus time-barred because it was filed more than one year after the March 13, 2003 Order.  Alternatively, Plaintiffs contend that even if this motion is properly a 60(b)(6) motion, it should be denied as failing to satisfy the "extraordinary circumstances" standard.

## B.  Judicial Error

Plaintiffs contend that this is properly a 60(b)(1) motion for relief from judicial error.  The Circuit Courts of Appeal are split as to whether a motion for reconsideration based on judicial error falls under 60(b)(1).[6]  The Second Circuit caselaw is equally confusing.  See, e.g., Schildhaus v. Moe, 335 F.2d 529, 531 (2d Cir. 1964) ("Whether relief may be sought under Rule 60(b) for what is merely an error by the court and, if so, for how long beyond the expiration of the ten-day limit set by Rule 59(e) for motions to 'alter or amend a judgment' are not altogether clear.").  In

---

[6]     See, e.g., Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir. 1982) ("The circuits are split as to whether errors of law may be corrected under Rule 60 motions.") (citing 7 J. Moore & J. Lucas, Moore's Federal Practice para. 60.22[3] (2d ed. 1982); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2858, at 176-80 (1973 & Supp. 1982); 1 ALR Fed. 771 (1969 & Supp. 1981); Note, Federal Rule 60(b): Finality of Civil Judgments v. Self-Correction by District Court of Judicial Error of Law, 43 Notre Dame Law. 98 (1967)); Silk v. Sandoval, 435 F.2d 1266, 1267 (1st Cir. 1971), cert. denied, Silk v. Kleppe, 402 U.S. 1012 (1971) (Refusing to apply 60(b)(1) to judicial error, noting that "[i]f the court merely wrongly decides a point of law, that is not 'inadvertence, surprise, or excusable neglect.'"); Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 460-61 (8th Cir. 2000), cert. denied, 531 U.S. 929 (2000) ("It remains the law in this Circuit that 'relief under Rule 60(b)(1) for judicial error other than for judicial inadvertence' is not available.") (citation omitted); but see Hill v. McDermott, Inc., 827 F.2d 1040, 1043 (5th Cir. 1987), cert. denied, 484 U.S. 1075 (1988) ("Rule 60(b)(1) does allow relief from final judgments on account of 'mistake,' and, in this circuit, the rule may be invoked for the correction of judicial error, but only to rectify an obvious error of law, apparent on the record.  Thus, it may be employed when the judgment obviously conflicts with a clear statutory mandate or when the judicial error involves a fundamental misconception of the law.")

distinguishing between the opinions of the various Circuit courts, Moore's Federal Practice asserts that "[t]he leading proponent for the construction of Rule 60(b)(1) so as to permit consideration of legal errors by the court was Judge Friendly of the Second Circuit." 12-60 Moore's Federal Practice - Civil § 60.41. In <u>Schildhaus</u>, the Second Circuit noted that "there is indeed good sense in permitting the trial court to correct its own error and, if it refuses, in allowing a timely appeal from the refusal; no good purpose is served by requiring the parties to appeal to a higher court, often requiring remand for further trial proceedings, when the trial court is equally able to correct its decision." <u>Schildhaus</u>, 335 F.2d at 531. However, the impact of <u>Schildhaus</u> is questionable, as the decision was limited to a very specific situation where a Supreme Court ruling decided eleven days after the trial court in <u>Schildhaus</u> ruled on the same legal issue clearly indicated that the ruling had been legally incorrect. <u>See id.</u> Thus, Moore's notes that the "Second Circuit [c]autiously [p]ermits [r]elief [f]rom [l]egal [e]rror." 12-60 Moore's Federal Practice - Civil § 60.41. While the court in <u>Schildhaus</u> embraced the reach of 60(b)(1) to include judicial error, it was also cautious to limit such interpretation to very specific circumstances such as those present in <u>Schildhaus</u>.

Later Second Circuit cases have expressed a hesitation to include judicial error as a "mistake" under 60(b)(1). <u>See</u> <u>In re Texlon Corp.</u>, 596 F.2d 1092, 1100 (2d Cir. 1979) ("We adopted th[e] view [that 'mistake' under 60(b)(1) encompasses judicial error] in <u>Tarkington v. United States Lines Co.</u>, 222 F.2d 358 (2d Cir. 1955), but only in what we later characterized, <u>see</u> <u>Schildhaus v. Moe</u>, 335 F.2d 529, 531 (2d Cir. 1964), as 'very special facts' . . . The 1978 edition of the Moore treatise reflects some disenchantment with the practice of utilizing F.R.Civ.P. 60(b)(1) as a vehicle for the

correction of judicial error, and the other leading treatise on federal practice displays still less enthusiasm.") (citing 11 Wright & Miller, <u>Federal Practice and Procedure</u>, s 2858 (1973)); <u>Matter of Emergency Beacon Corp.</u>, 666 F.2d 754, 759 (2d Cir. 1981) ("Although the language of the current Rule 60(b)(1) is broad enough to encompass errors by the court, the authorities are divided as to whether it is properly so interpreted.") (citing 7 Moore's Federal Practice P 60.22(3) (2d ed. 1979); 11 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> s 2858, at 176-80 (1973)).

    More recently, district courts within the Second Circuit have interpreted 60(b)(1) as encompassing judicial error. <u>See</u> <u>In re Asbestos Litig.</u>, 173 F.R.D. 87, 90, n.2 (S.D.N.Y. 1997) ("When applied to mistakes by the court, Rule 60(b)(1) generally allows for relief where the error involves the application of law.") (citing <u>Int'l Controls Corp. v. Vesco</u>, 556 F.2d 665, 670 (2d Cir.1977), <u>cert. denied</u>, 434 U.S. 1014 (1978); <u>Parks v. U.S. Life & Credit Corp.</u>, 677 F.2d 838, 839-40 (11th Cir.1982), <u>reh'g denied</u>, 685 F.2d 1389 (11th Cir. 1982); 11 Wright, Miller & Kane, <u>Federal Practice and Procedure</u>: Civil 2d § 2858 at 293-98 (2d ed. 1995)); <u>PG 1044 Madison Assocs., L.L.C. v. Sirene One, L.L.C.</u>, 229 F.R.D. 450, 452 (S.D.N.Y. 2005) ("Although 60(b)(1) does not serve as a substitute for appeal, it nevertheless 'encompass[es] judicial mistake in applying the appropriate law.'") (citations omitted); <u>Badian v. Brandaid Commc'ns Corp.</u>, No. 03-2424, 2005 WL 1083807, at *2 (S.D.N.Y. May 9, 2005) (same); <u>Spira v. Ashwood Fin., Inc.</u>, 371 F.Supp.2d 232, 236 (E.D.N.Y. 2005) ("'Relief under 60(b)(1) is ⋯ appropriate where a court may have overlooked

certain parties' arguments or evidence in the record.'") (citation omitted).[7]

   A review of the Court's M&O of March 13, 2003 in <u>Air India</u> at which this motion is aimed gives rise to questions which, for me, are interesting, if not troubling.  What constitutes "error" within the meaning of the term judicial error? Before the Court then was a motion pursuant to Fed. R. Civ. P. 59(e) for an order amending a prior decision of the Court reflected in an M&O of February 14, 2002, which, as described in the opening sentence of the March 13th M&O, was "an action [that] involve[d] the validity, interpretations, and application of certain INS [R]egulations that may require aliens lawfully admitted for permanent residence who are returning from abroad ("special immigrants"), <u>see</u> 8 U.S.C. § 1101 (a)(27)(A), to present certain re-entry documents, and the propriety of fining airlines who transport those lacking such documents."

   The M&O of February 14, 2002, extended over thirty pages devoted entirely to a discussion and parsing primarily lengthy and complex Immigration and Naturalization Act ("INA") Regulations addressing whether an alien is required to possess a passport and/or a visa when entering the United States; whether or not such document was required determined, it was contended, whether an airline transporting such alien to the United States could be fined.  If such a document was required and not

---

  [7]  The Second Circuit has held that a 60(b)(1) motion for relief from judicial error must be made within the time allowed for appeal.  <u>See</u> <u>In re Texlon Corp.</u>, 596 F.2d 1092, 1100 (2d Cir. 1979) ("[T]he 'reasonable time' requirement of F.R.Civ.P. 60(b) would be read as requiring a motion for relief from judicial mistake to be made within the time allowed for appeal.") (citing 7 Moore, Federal Practice 1100 P 60.25(2) at 268 (2d ed. 1978); 11 Wright and Miller, <u>Federal Practice and Procedure</u>, s 2862 at 198 (1973)).

possessed by the alien when arriving here, the airline could be fined, and if the document was not possessed but not required to be, the airline, it was argued, could not be fined.

A reading of the transcript of the proceeding at which the motion was argued on January 18, 2002, plainly reveals that the focus of the argument was on the interpretation and validity of the INA Regulations.  For example:

On page 3, lines 17-18: "8 CFR Section 211, the [R]egulation at issue in this case . . ." (emphasis added).

On page 4, lines 21-22: "The section of the [R]egulation at issue is Subdivision B of that [R]egulation which corresponds to Subdivision B of 1182." (emphasis added).

On page 5, lines 20-21: "Every one of the passengers at issue was readmitted under 211(b)(3) under the [R]egulation . . ." (emphasis added).

On page 6, lines 9-10: "[W]here the [R]egulation clearly and affirmatively requires visas or courts to do so . . ." (emphasis added).

On page 6, lines 22-25 and page 7, lines 1-2: "The INS also concedes that it has no authority to require visas of special immigrants who are admitted under the 1966 version of the [R]egulation.  That is because the INS insists in both its briefs submitted in support of its motion that the 1966 and 1998 amendment [R]egulations are identical." (emphasis added).

On page 9, lines 1-3: "[T]he INS has failed to this very day explain how its interpretation of the [R]egulation at issue can be properly interpreted as permitting fines on airlines . . ." (emphasis added).

On page 10, lines 4-5, 16-18, 21-25; page 11 lines 1, 9-13: The Court: "Is it your position then the [R]egulations are invalid because it hasn't been published for comment?"

"Is it your position the [R]egulation is valid notwithstanding the fact that it wasn't published with notice for comment?"

Mr. Fuchs: "My position is if the [R]egulation is valid, either way. If the [R]egulation is valid, then it cannot be interpreted to any detriment on the regulated public that did not exist before and that the INS's interpretation cannot be correct. If the INS's interpretation is correct, the intent was to impose a new detriment, the [R]egulation is void."

The Court: "In your view it doesn't make any difference whether the [R]egulation had been published for comment or not, either way it would have been valid or in either way, it wouldn't have justified the imposition of the fine?"

On page 15, lines 8-10: "In the Attorney General's statement of intent in the [R]egulation, the [R]egulation at issue, we as persons affected by the [R]egulation were intended to benefit." (emphasis added).

A review of the briefs filed by the parties in the underlying motions

reveals a similar emphasis. Thus, the issue presented to the Court was an interpretation of the <u>Regulations</u>, and not the underlying statute.[8] As such, it can hardly be said that, in addressing the issues before it, namely, the validity and import of the Regulations, this Court's prior decisions in <u>Air India</u>, while ultimately rendered moot by a precise and analytical focus upon the underlying statute, constituted judicial error.

        Additionally, the Court notes that the arguments focusing on the Regulations rather than the statute were not error on the part of Defendants or Defendants' counsel. The BIA, the administrative agency charged with interpreting the INA Regulations and immigration statutes, had issued a long string of decisions focusing entirely on the Regulations and determining fine liability based on the Regulation in effect at the time of each fine. <u>See</u> <u>United Airlines</u>, 337 F.Supp.2d at 411 (Discussing the BIA decision in <u>Matter of Plane "CUT-604"</u>, 1958 WL 9850, 7 I. & N. Dec. 701, 702 (1958), and noting that the BIA there stated, "The carrier was fined in accordance with 8 U.S.C. § 1323 and the carrier appealed. The Board stated the issue to be whether the waiver relieved the carrier of liability to fine and began its decision thus: 'We have previously answered this question both affirmatively and negatively, depending upon the [R]egulations in effect at the time involved.'"). As such, both plaintiffs' and defendants' focus on the Regulations, as opposed to the underlying

---

[8]    Defendants correctly point out that they did reference <u>Hamburg-American Line v. United States</u>, 291 U.S. 420 (1934), upon which this Court based its decision in <u>United Airlines</u>, in their briefing of the earlier motions. However, the focus of the argument was unequivocally based on the interpretation of the various Regulations and the import of <u>Hamburg</u> upon the ultimate determination of the case was all but ignored and diverted from the Court's attention. <u>See</u> Defendants' Memorandum of Law in Support of Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure.

statute, were entirely justified.

While Plaintiffs assert that the prior decisions of this Court were the result of error (either judicial error, error by counsel or error by party), thereby subjecting this motion to Rule 60(b)(1) and rendering it time-barred, for the foregoing reasons, this Court determines that no such error applies here.

### C. Fed. R. Civ. P. 60(b)(6)

Rule 60(b)(6) "'confers broad discretion on the trial court to grant relief when appropriate to accomplish justice.'" <u>Matarese v. LeFevre</u>, 801 F.2d 98, 106 (2d Cir. 1986), <u>cert.</u> <u>denied</u>, 480 U.S. 908 (1987) (quoting <u>Klapprott</u>, 335 U.S. at 615). It is "properly invoked where there are extraordinary circumstances," <u>id.</u> (quoting <u>Ackermann</u>, 340 U.S. at 199), or "where the judgment may work an extreme and undue hardship," <u>id.</u> (citations omitted), and "should be liberally construed when substantial justice will thus be served." <u>Id.</u> However, "final judgments should not be reopened lightly." <u>Air Espana v. Brien</u>, No. 95-1650, 1998 WL 178823, at *2 (E.D.N.Y. Feb. 11, 1998) (quoting <u>Nemaizer v. Baker</u>, 793 F.2d 58, 60 (2d Cir.1986)). Thus, "[w]hen a movant is able to demonstrate that the interests of justice favor vacatur, Rule 60(b)(6) 'allows a district court to vacate its own final judgment.... The Rule gives the Court such authority to accomplish justice and leaves such determinations to its discretion.'" <u>Socialist Republic of Romania v. Wildenstein & Co. Inc.</u>, 147 F.R.D. 62, 64-65 (S.D.N.Y. 1993) (citation omitted). In <u>Klapprott</u>, the Supreme Court noted, "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." <u>Klapprott</u>, 335 U.S. at 614-15.

As noted above, this Court determines that the circumstances leading to the prior decisions do not constitute error by the Court or parties. Even assuming, _arguendo_, that there was some form of error, it would not be fatal to Defendants' motion. Defendants have brought this motion based on several other grounds which properly fall under a 60(b)(6) motion. Specifically, Defendants assert that the conflicting opinions issued by this Court have created confusion in the law as well as specific hardship to Defendants who will have difficulty enforcing the immigration laws and controlling the border unless the decisions are clarified. Additionally, as will be discussed more fully below, Regulations promulgated pursuant to a statute, as here, are bound by the text of the statute itself as well as the congressional intent behind the statute. This Court finds that these grounds form sufficient bases for a 60(b)(6) motion based on "extraordinary circumstances" and because "the judgment may work an extreme and undue hardship" that in the interest of justice require reconsideration of its March 13, 2003 Order. In so categorizing the motion, this Court is hardly performing the "semantic tour-deforce " the Ninth Circuit accused Judge Learned Hand of doing in <u>United States v. Karahalias</u>, 205 F.2d 331 (2d Cir. 1953), where the Second Circuit placed the 60(b) motion within the purview of subsection (6) rather than subsection (1). <u>See</u> <u>McKinney v. Boyle</u>, 404 F.2d 632, 634 (9th Cir. 1968), <u>cert.</u> <u>denied</u>, 394 U.S. 992 (1969). Viewing this motion as properly pursuant to 60(b)(6), it is timely as it was brought within a reasonable time after the <u>United Airlines</u> decision.

## II. Administrative Regulations are Limited by the Statute Pursuant to Which they are Promulgated - The <u>Chevron</u> Doctrine

Administrative agency Regulations are subject to judicial scrutiny ensuring that the Regulation does not exceed the scope of the statute pursuant to which it was promulgated and is not contrary to the congressional intent behind the statute. <u>See</u> <u>Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.</u>, 467 U.S. 837, 843, n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.") (citations omitted). <u>Chevron</u> dictates that a court reviewing an agency's interpretation of the statute that it administers must consider "[f]irst, always, [ ] the question [of] whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." <u>Id.</u> at 842-43; <u>see also</u> <u>Kruse v. Wells Fargo Home Mortgage, Inc.</u>, 383 F.3d 49, 57 (2d Cir. 2004) (declining to defer to the administrative agency's interpretation of the statute where such interpretation was contrary to the statute and congressional intent).

In the Sept. 14, 2004 <u>United Airlines</u> decision, this Court employed a <u>Chevron</u> analysis and determined that "[t]he statute, 8 U.S.C. § 1323, is unambiguous. A carrier acts unlawfully, it provides, when it brings to the United States an undocumented alien and may be fined for doing so. Liability is incurred by the carrier at the moment that alien is brought here. That reading of the statute advances the recognized intent of Congress in enacting it." <u>United Airlines</u>, 337 F.Supp.2d at 413 (citations omitted). In so defining the statute, this Court determined that prior BIA

decisions were wrong where they allowed Regulations promulgated pursuant to the statute to prohibit the imposition of fines on carriers where an alien was subsequently paroled or received a waiver.  See id. (noting that "[i]t would be an exaggeration to suggest that the BIA's interpretation of the [R]egulations as granting a blanket waiver was so monstrous that all mankind would unhesitatingly unite in rejecting it. It suffices to say that, in my view, the BIA's application of those [R]egulations was misplaced."). This Court also found that the text of the Regulations themselves do not compel such an interpretation, even if the statutory text had been ambiguous.  See id. at 413-14 ("One parses that [R]egulation in vain to find language creating a blanket general waiver or even the slightest hint of one . . . The interpretation placed upon those [R]egulations by the BIA not only ignores the condition precedent to the grant of a waiver inherent in each, it also aborts the intent of Congress as clearly reflected in §§ 1323(a) and (b).").  In the March 13 Order, this Court determined that the Attorney General's intent could not have been the imposition of fines on the carriers when the aliens were paroled or received a waiver because the Regulation's notice and comment section stated it was to "confer[ ] benefits on persons affected thereby."  Air India, 261 F.Supp.2d at 139 (citation omitted).  This was refuted by the Court's determination in United Airlines that "[t]he waiver granted the alien is for his benefit and permits him to enter the country from which he otherwise would have been excluded.  It plainly is not intended to confer a benefit upon the carrier which violated our laws by bringing him here without first ascertaining that he possessed the required documentation."  United Airlines, 337 F.Supp.2d at 414.

This Court did not specifically address the scope or limit of 8 U.S.C.

§ 1323 in the previous <u>Air India</u> decisions, including the March 13 Order. As such, the Sept. 14 decision in <u>United Airlines</u> renders the March 13 Order moot. While, as noted above, the <u>United Airlines</u> M&O indicates that even construing the Regulation as prohibiting fines is a wrong interpretation of the text of the Regulations, <u>see id.</u> at 413-14, such an interpretation is irrelevant following this Court's decision in <u>United Airlines</u>. Since the statute itself does not allow for a blanket waiver of fines, regardless of the subsequent entry of the alien, Regulations promulgated pursuant to the statute that do allow for such waivers are void. <u>See id.</u> at 414. Thus the focus on the interpretations of the Regulations and the methods whereby they were promulgated in the previous <u>Air India</u> decisions missed the point. Regardless of what the Regulations themselves say, and regardless of the intent of the Attorney General in promulgating the Regulations, and regardless of the method by which they were promulgated, they cannot be construed as prohibiting the INS from imposing fines on carriers who bring to the United States aliens without the required documentation, even if those aliens are subsequently paroled or receive a waiver of the required documents. <u>See id.</u> at 413-19.

### III. Relief from the March 13 Order

This Court finds that its decision in <u>United Airlines</u> provides a basis for relief pursuant to Fed. R. Civ. P. 60(b)(6) from its March 13 Order in <u>Air India</u>. The circumstances here, where this Court's later decision in a related case, including most, if not all, of the same parties, cast a long shadow of doubt on its earlier decision and, more importantly, rendered the government's obligation to control its borders far more difficult, constitute the "extraordinary circumstances" necessary to invoke relief under

60(b)(6).  See Matarese, 801 F.2d at 106.  This is a situation where "the judgment may work an extreme and undue hardship," id., and, as such, this Court will invoke the "broad discretion on the trial court to grant relief when appropriate to accomplish justice" conferred by Rule 60(b)(6).  Id. (quoting Klapprott, 335 U.S. at 615).[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion for relief from this Court's March 13, 2003 order is GRANTED.


SO ORDERED.

Dated:        December 27, 2006
              Brooklyn, New York

                                         ____/s/_____

                                         I. Leo Glasser
                                         United States Senior District Judge


---

[9]        The Court notes that granting Defendants' motion will "not be an empty exercise or futile gesture."  See Owens v. U.S., No. 96-5928, 1997 WL 177863, at *2 (E.D.N.Y. Apr. 3, 1997) (Glasser, J.) ("It has long been established that as a precondition to relief under Rule 60(b), the movant must provide the district court with reason to believe that vacating the judgment will not be an empty exercise or futile gesture. Although the proffered claim or defense need not be ironclad, a Rule 60(b) movant must at least establish that it possesses a potentially meritorious claim or defense which, if proven, will bring success in its wake.")  As fully enumerated above, the Defendants have been practically harmed in a number of ways by the March 13 Order and granting their motion will provide tangible relief.

Copies of the foregoing memorandum and order were electronically sent to:

<u>Counsel for the Plaintiff</u>

Christina Hagan
Hagan Coury & Associates
908 4th Ave.
Brooklyn, NY 11232
718-788-5052
Fax: 718-965-4017
Email: chris9084@aol.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

<u>Counsel for the Defendant</u>

Scott Dunn
United States Attorneys Office
Civil Division
One Pierrepont Plaza
11th Floor
Brooklyn, NY 11201
(718) 254-6029
Fax: 718-254-6081
Email: Scott.Dunn@USDOJ.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED